ROBERT J. ROSATI, No. 112006
robert@erisalg.com
THORNTON DAVIDSON, No. 166487
thornton@erisalg.com
ERISA Law Group, LLP
2055 San Joaquin Street
Fresno, California 93721
Tel: 559-256-9800
Fax: 559-256-9795

Attorneys for Plaintiff,
DONALD HALL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

ED CV 12 - 01911

DONALD HALL,

    Plaintiff,

v.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, a corporation.

    Defendant.

Case No.

**COMPLAINT FOR DAMAGES:**

1. **BREACH OF CONTRACT**
2. **INSURANCE BAD FAITH**
3. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**DEMAND FOR JURY TRIAL**

Plaintiff, Donald Hall ("Plaintiff" or "Hall"), alleges as follows:

## JURISDICTION

1. Jurisdiction in this Court is proper in this action pursuant to the provisions of 28 U.S.C. §1332 because, as more fully appears below, the amount in controversy exceeds the value or sum of $75,000.00 and the parties are citizens of different states.

///

///

---

COMPLAINT FOR DAMAGES

1

## VENUE

2. Venue is proper in the Central District of California in that Plaintiff is and was a resident of the City of Hemet, California, Riverside County, California, when Defendant terminated Plaintiff's long term disability ("LTD") benefits and breached its contract and other obligations to Plaintiff.

## INTRADISTRICT ASSIGNMENT

3. This civil action, which arose in Riverside County, is properly assigned to the Eastern Division.

## PARTIES

4. Plaintiff Hall is, and at all times mentioned herein was, a citizen of the State of California and a resident of the City of Hemet, County of Riverside, State of California.

5. Defendant, The Lincoln National Life Insurance Company ("Lincoln"), is a corporation organized and operating under the laws of the State of Indiana with its principal place of business in Fort Wayne, Indiana and which is licensed to transact, and is transacting, insurance in the State of California.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

6. Effective February 1, 2008, The Lincoln National Life Insurance Company issued Group Long Term Disability Policy Number 000010101005 to Yorba Linda Friends Church ("The Policy").

7. The Yorba Linda Friends Church is a Church plan organized and operating under the laws of the State of California, and is not an ERISA plan. The Yorba Linda Friends Church Plan was established and is maintained for its employees or their beneficiaries by a church which is exempt from tax under Section 501 of Title XVI. 29 U.S.C. § 1002(33)(A). An organization is controlled by a church when a majority of the officers or directors are appointed by a church's governing board or by officials of a church, as is the case for Yorba

Linda Friends Church.

8. Plaintiff was an employee of the Yorba Linda Friends Church and a third-party beneficiary of The Policy because he was an employee of the Yorba Linda Friends Church, and was thus covered by The Policy.

9. The Policy "is delivered in the State of California" and "subject to the laws of that jurisdiction."

10. The Policy defines:

"'Total Disability' or 'Totally Disabled'" will be defined as follows:

    1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation.

    2. After the Own Occupation Period, it means that due to an Injury of Sickness the Insured Employee is unable to perform each of the main duties of any gainful occupation which his or her training, education, or experience will reasonably allow."

11. However, these policy provisions are superceded by operation of California law.

12. Under The Policy a person is disabled if he meets the "own occupation" definition of disability during the period to which it applies and the "any occupation" definition of disability during the period that it applies.

13. The Policy definitions of "disabled," as alleged in Paragraph 10, are superceded by California law. Notwithstanding the specific language of The Policy, as alleged in Paragraph 10, under California law total disability within the meaning of the term "any occupation" as contained in a general disability clause is that which prevents the insured from engaging in any occupation or performing any work for compensation and which prevents him/her from working with

COMPLAINT FOR DAMAGES

3

reasonable continuity in his/her customary occupation or in any other occupation in which he/she might reasonably be expected to engage in view of his/her station and physical and mental capacity. Therefore, California law requires an insurance company to consider: (A) whether the claimant could reasonably be expected to work; recognizing the fact that the insured may do some work or even the fact that he/she may be physically able to do so is not conclusive evidence that his/her disability is not total, if reasonable care and prudence require that he/she desist; (B) given the claimant's physical and/or mental capacity; (C) and his or her station in life; (D) to perform the "substantial and material" duties of his/her own occupation; (E) with "reasonable continuity"; and (F) in the usual and customary way. Recover is not precluded because the claimant is able to perform sporadic tasks or attend to simple, inconsequential details incident to the conduct of business. When evaluating a claimant's capacity to perform "any occupation" the insurance company must take into account the claimant's age, education, experience, training, and station in life. Thus, an uneducated laborer cannot be expected to become an accountant or banker and a doctor, lawyer, or business executive is totally disabled even if he could run a news stand or work as a day laborer.

14. Plaintiff became disabled effective July 8, 2009.

15. Plaintiff completed the benefit waiting period specified in the Policy.

16. By letter dated January 6, 2010, Lincoln notified Hall that LTD benefits had been approved effective October 6, 2009.

17. By notice dated September 24, 2010, the Social Security Administration notified Hall that it had found that he became disabled under its rules on November 19, 2009, and that SSDI benefits entitlement would begin May 2010. Hall sent a copy of this notice to Lincoln.

18. By letter dated October 3, 2010, Lincoln notified Hall that it acknowledged receipt of the Notice of SSDI award and based on that award

1 determined that his claim had been over paid by $4,879.83, and demanded
2 repayment, which was promptly made.

3     19. By letter dated March 8, 2011, Lincoln notified Hall of the need for
4 "proof of continued disability" regarding his LTD claim.

5     20. By letter dated October 19, 2011, Lincoln notified Hall that necessary
6 information to complete the "any occupation" investigation for his claim had not
7 been received and therefore Lincoln was closing the handling of his claim. It also
8 notified him of his right to appeal, as set forth in The Policy.

9     21. On October 29, 2011, Hall completed (and on October 31, 2011 faxed
10 to Lincoln) his "supplementary statement" in which he wrote that he does not
11 know when it would be possible for him to return to work, that he has a great deal
12 of pain in his lower back which continues down his right leg and to his left leg and
13 feet and also up his spine and especially his right shoulder and then the left side of
14 his hands are also effected and this also causes condition. He understands this
15 pain is caused by injury to his back combined with a surgery that left him in so
16 much pain. He explained that "Dr. Lai told me it is not that we can eliminate the
17 pain but that we can try to control it by pain medication and core strength
18 training." He described his restrictions and limitations he cannot lift anything
19 over 20 pounds and bending, sitting, lying down, kneeling, basic movement are
20 usually very limited to the amount of pain he has each day. Standing is limited as
21 well as sitting. He spends time lying down to relieve pressure. The pain really
22 effects his ability to concentrate and focus on a task. He also explained his present
23 activities - - limited. That his wife and mother help cooking, cleaning, dishes,
24 laundry, and driving. He listed his doctors.

25     22. On November 22, 2011, David Trotter, MD, provided a "peer review
26 final report" through Advanced Medical Reviews on Hall for Lincoln.

27     23. On November 28, 2011, Lincoln's Diane Rowe, MS, CRC, provided
28     a

vocational assessment/transferable skills analysis.

24. By letter dated December 20, 2011, Lincoln terminated Hall's LTD benefits as of October 6, 2011 - - i.e., at the end of the "own occupation" period of benefits and notified him of his right to submit an appeal, as set forth in The Policy.

25. By letter dated May 20, 2012, Plaintiff submitted his appeal and request for reconsideration from the termination of his LTD benefits.

    A. The appeal included a 49 page letter from Plaintiff's counsel which summarized the procedural history of Plaintiff's claim, stated the bases for the appeal, quoted relevant policy definitions, explained the California law superceded policy definitions regarding what constituted disability under the "any occupation" standard, explained Plaintiff's functional status during the relevant time periods, summarized his medical treatment records – including Hall's specific conditions of Lumbar Radiculopathy; Lumbar Spondylosis; Degenerative Lumbar Discs; Bulging Discs; Chronic Pain Syndrome; Moderate Foraminal Stenosis; Facet Arthropathy; Right Lateral and Left Paracentral Lateral Disc Protrusion; Depression; and Post Lumbar Surgery.

    B. Hall appealed on the bases of Lincoln's conclusion that Hall is not disabled is based on erroneous findings of fact: there is simply no supporting evidence for that conclusion. The evidence establishes that Hall is disabled and is entitled to benefits; Lincoln ignored Hall's functional limitations; Lincoln disregarded Hall's medical treatment and the opinions of his doctors; Lincoln's medical and vocational evaluations are seriously flawed, patently erroneous, and appear to be

COMPLAINT FOR DAMAGES

6

intentionally fraudulent; Lincoln's investigation and its evaluation of Hall's claims was wholly inadequate, inaccurate, unfair and obviously biased.

C. Lincoln obtained its reviewing doctor from AMR. Lincoln knows or should know that AMR - - and by definition all doctors provided by it - - is highly suspect because AMR provides biased doctors; Lincoln failed to reasonably address pain as a disabling condition; Lincoln failed to reasonably consider fatigue as a disabling condition; Lincoln failed to address the medications Hall takes and the effects those medications have on his and his ability to function, much less work in a full time capacity; the opinions of Lincoln's reviewing physician and nurse are so analytically unsound and riddled with errors and deficiencies that no responsible fiduciary would rely upon; Hall's plan is not an ERISA plan; Lincoln did not utilize the legally correct standard of "totally disabled;" Lincoln acted in bad faith by failing to conduct a fair and thorough investigation of Hall's claim.

D. Plaintiff's counsel explained that Lincoln's reviewing physician, Dr. Trotter's opinions are without merit, in part because Dr. Trotter was not provided the fact that Hall was awarded Social Security Disability benefits ("SSDI"). or the actual legal standard to be addressed: the California standard of disability mandated by California law and by the explicit terms of the policy, and that even though Lincoln obtained records <u>after</u> September 8, 2011, it did not ask Dr. Trotter to comment on those records; that Dr. Trotter did not address Hall's pain, repeated efforts to ameliorate that pain with various pain

medications, that are changed recurrently in part because Hall was having side effects from the medications, and in part because he and his doctors did not want him to become addicted to opioid medications. Dr. Trotter opined that Hall would be able to perform work at the light work level which is inconsistent even with Dr. Trotter's restrictions and limitations: Dr. Trotter limited Hall to walking or standing each for up to 30 minutes at a time and no more than two hours a day. If a person can only walk or stand up to four hours in an eight hour work day he or she is not capable of light work , only sedentary work. In other words, Dr. Trotter's conclusion that based on his evaluation of Hall's capacity, Hall is capable of light work, is legally incorrect. Dr. Trotter's factual conclusion that Hall is capable of even sedentary work is medically incorrect. Dr. Trotter's assessment significantly understates the magnitude and severity of Mr. Hall's back condition. Dr. Trotter had medical records that commented on a 2007 MRI, but not the MRI report itself. There is now an April 2012 MRI report. Dr. Trotter's opinions are outside the mainstream of established medical science.

E. Plaintiff further explained in the appeal that Lincoln: "failed to follow the Code of Professional Ethics for Rehabilitation Counselors, adopted June 2009 and effective January 1, 2010, and her conclusions are factually unsupported, stating, in part:

There are a number of obvious flaws in Ms. Rowe's vocational assessment/transferable skills analysis:

    i.    She does not apply the California criteria for what

|     |     |      |                                                                      |
| --- | --- | ---- | -------------------------------------------------------------------- |

1            constitutes "any occupation."
2       ii.  She relies upon Dr. Trotter's IME report, exclusively. As stated elsewhere, Dr. Trotter's report is unreliable and factually unsupported.
5       iii. Ethically Ms. Rowe should have contacted Mr. Hall.
6       iv.  Ethically, Ms. Rowe should have utilized medical evaluations not only from Dr. Trotter but also from Mr. Hall's treating physicians - - and when they disagreed it is not her function to evaluate which assessment was correct.
11      v.   It appears that all the jobs with Ms. Rowe identifies for Mr. Hall are jobs that require at least a high school diploma. But, of course, Mr. Hall does not have a high school diploma. That is, Ms. Rowe contends that Mr. Hall can perform jobs which no employer would hire him to do because of his lack of education.
17      vi.  The proposition that Mr. Hall is capable of working at either a sedentary or light physical capacity is utterly unsupported by the actual medical facts."

26. By letter dated August 30, 2012, Lincoln invited Hall to comment on the review completed on June 25, 2012, by Dr. Mehras Akhavan.

27. By letter dated September 4, 2012, Hall responded to Lincoln's medical review, stating, in part:

    A. Dr. Akhavan did not examine or try to examine Hall.

    B. It is clear from his report that Dr. Akhavan did not review all or even most of the relevant records.

    C. It is also clear that Dr. Akhavan did not properly

COMPLAINT FOR DAMAGES

9

          read or understand the records provided because he disregards critical facts.

D.   The only "review data" provided to Dr. Akhavan according to his report was the U.S. Department of Labor definitions of work capacity. That is, Lincoln did not provide the policy definitions; you did not provide the *Erreca* definitions of disability; Lincoln did not provide the appeal letter or Hall's declaration. "The only information [Lincoln] did provide is information that is deliberately misleading because it does not set the standard for determining whether Hall can work. So Lincoln asked for a fraudulent bad faith report and it got one."

E.   Dr. Akhavan acknowledged that Hall has had no change in his pain characteristics, has a high level of pain, decreased lumbosacral range of motion, multilateral degenerative disk disease, and bilateral L4 and right S1 root impingements and canal stenosis, and that he takes opioid pain killers.

F.   In evaluating Mr. Hall's restrictions and limitations Dr. Akhavan disregarded:
    i.   Pain as a disabling condition.
    ii.   Fatigue as a disabling condition.
    iii.   Side-effects of medication as a disabling condition."

G.   Dr. Akhavan failed to perform a whole person evaluation.

|   |   |   |   |
|---|---|---|---|
| 1 |  | H. | Lincoln failed to address Hall's treating physicians opinions, as did Dr. Akhavan. |
| 2 |  | I. | Lincoln failed to give any weight to Hall's Social Security award. Here, Lincoln obviously withheld the facts of the Social Security award from Dr. Akhavan so that he would render an opinion more favorable to Lincoln's financial interest. |

28. By letter dated October 19, 2012, Lincoln denied Hall's appeal. The letter:

    A. Quoted and improperly relied upon the definition of disabled set forth in Paragraph 9 rather than the proper standard, set forth in Paragraph 12.

    B. Summarized by Akhavan's report.

    C. Summarized certain medical records.

    D. Summarized a vocational review and its conclusion.

    E. Referenced Hall's SSDI award.

    F. Concluded Hall was not disabled.

    G. Invited Hall to submit a second appeal, which he did by letter dated October 24, 2012, but which is nt required under the terms of The Policy.

29. Plaintiff is, and at all times since July 8, 2009, has been and continues to be totally disabled under the terms of The Policy, as properly construed and applied.

30. The Policy was in full force and effect when Plaintiff became totally disabled.

31. Plaintiff has performed all conditions on his part to be performed under the terms of The Policy.

32. Defendant Lincoln breached its obligations under the Policy to Hall

by failing and refusing to pay LTD benefits to him after October 6, 2011. Furthermore, Lincoln's termination letter and appeal denial letter constitute an express repudiation and anticipatory breach of Lincoln's future obligations to pay benefits to Hall under The Policy, thus making all of its obligations under The Policy now due and owing.

33. As a result of Defendant Lincoln's breach of The Policy, Plaintiff Hall has suffered damages. Specifically, there is, under the terms of The Policy, now due and owing to Plaintiff from Defendant:

    A. The sum of $14,413.65, for past due benefits from October 6, 2011 to October 5, 2012; and,

    B. The sum of $198,186.45, for future benefits from October 6, 2012, until Plaintiff attains the age of 65;

    C. Totaling $212,600.10 plus 10% interest on past due benefits.

### SECOND CLAIM FOR RELIEF
### (Insurance Bad Faith)

34. Plaintiff incorporates by reference paragraphs 1 through 33 of this Complaint.

35. By virtue of The Policy there is and was an implied by law covenant of good faith and fair dealing which required Defendant to deal in good faith and fairly with Plaintiff in handling his claim, refrain from doing anything to injure Plaintiff's right to receive the benefits of The Policy, and which required Defendant to give at least as much consideration to Plaintiff's interests as it gave to its own interests.

36. Notwithstanding Defendant's knowledge of its obligations to pay Plaintiff's disability benefits under The Policy, Defendant has failed and refused to do so.

37. After October 6, 2011, Defendant unreasonably and in bad faith withheld and refused to pay Plaintiff benefits due him under The Policy.

Defendant's unreasonable and bad faith conduct included, but was not limited to the following:

    A. Defendant terminated Plaintiff's LTD benefits arbitrarily and without proper cause.

    B. Defendant dishonestly selected experts whom it knew to be unreasonable to evaluate Plaintiff's claim.

    C. Defendant unreasonably failed to conduct a thorough investigation of Plaintiff's claims.

    E. Defendant failed to investigate Plaintiff's claim objectively.

    F. Defendant used improper standards to terminate Plaintiff's claim.

    G. Defendant unreasonably interpreted the language of The Policy.

    H. Defendant failed to investigate the new evidence Plaintiff submitted as part of his request for review in an objective and reasonable manner and refused to reevaluate Plaintiff's claim despite overwhelming evidence that its initial decision was wrong.

    I. Defendant used personnel who lacked adequate training and experience to evaluate Plaintiff's claim.

38. Defendant, as a matter of custom and practice, unreasonably and in bad faith withholds or terminates policy benefits due to its insureds. Defendant's unreasonable and bad faith conduct includes, but is not limited to, the following:

    A. Knowingly misrepresenting to claimants pertinent facts relating to coverage or policy provisions.

    B. Failing to adopt and implement reasonable standards for prompt investigation and processing of claims arising under its insurance policies.

COMPLAINT FOR DAMAGES
13

|   |   |   |
|---|---|---|
| 1 | C. | Not attempting in good faith to effectuate prompt, fair and |
| 2 |    | equitable settlement of claims in which liability has become |
| 3 |    | increasingly clear. |
| 4 | D. | Compelling insureds to institute litigation to recover amounts |
| 5 |    | due under insurance policies. |

39. Lincoln, as a matter of custom and practice, engages in the following unfair and bad faith claims practices, and did so with regard to Hall's claim:

   A. Failing to obtain medical records needed for the decision.

   B. Making an inappropriate use and consideration in-house medical resources.

   C. Failing to routinely contact attending physicians where circumstances warrant it and failing to fairly interpret or imply information from the claimant's attending physician.

   D. Failing to conduct occupation reviews as appropriate.

   E. Failing to obtain independent medical examinations or functional capacity evaluations in appropriate circumstances.

   F. In claims involving multiple conditions or co-morbid conditions, failing to evaluate the totality of the claimant's medical condition.

   G. Placing an inappropriate burden upon claimants to justify eligibility for benefits and denying claims because the claimant fails to provide "objective evidence" of a disabling condition even though the policy does not require that the claimant provide such evidence.

40. Here, Lincoln additionally acted in bad faith as follows:

   A. Lincoln's conclusion that Plaintiff is and was not disabled pursuant to The Policy was based on clearly erroneous findings of fact: there is simply no supporting evidence for that

conclusion. The evidence presented to Lincoln established that Plaintiff is and was totally disabled and is and was entitled to benefits under The Policy.

  B. Lincoln ignored Plaintiff's functional limitations.

  C. Lincoln disregarded Plaintiff's history of medical treatment and the opinions of his doctors.

  D. Lincoln failed to have Hall examined by a physician. The Policy provides it with the authority to have a claimant examined. Instead of conducting a fair or reasonable investigation, Lincoln simply selectively considered limited information in order to justify a pre-determined and unjustified conclusion to deny benefits.

  E. Lincoln failed to reasonably consider pain as a disabling condition.

  F. Lincoln failed to reasonably consider fatigue as a disabling condition.

  G. Lincoln failed to reasonably consider the side effects of the medications Hall takes and the effects those medications have on her and her ability to function, much less work in a full time capacity.

  H. Hall had no relevant change and no improvement in his medical condition for years.

41. As a direct and proximate result of Defendant's unreasonable failure to pay benefits under the Policy, Plaintiff has been denied benefits under the Policy in an amount totaling $212,600.10, plus interest at 10% on past due benefits.

42. As a further direct and proximate result of Defendant's unreasonable failure to pay Policy benefits, Plaintiff lacks sufficient funds to pay routine

1 expenses.

2   43.   As a further direct and proximate result of Defendant's wrongful conduct as herein alleged, Plaintiff sustained emotional and mental distress and anguish, embarrassment, and other general damages in an amount reasonably valued at $5,000,000.00.

  44.   As a further direct and proximate result of Defendant's unreasonable and bad faith failure to pay Policy benefits, Plaintiff was required to retain the services of counsel and suffered damages measured by the reasonable value of attorney's fees incurred obtaining Policy benefits.

  45.   In committing the acts described in this Complaint in Paragraphs 1 through 44, Defendant acted in conscious disregard of the rights of Plaintiff and is guilty of malice, oppression and fraud. The conduct of Defendant warrants an award of punitive and exemplary damages in an amount appropriate to punish Defendant and deter it and others from engaging in similar wrongful conduct.

  46.   Plaintiff is a disabled person as that term is used in California Civil Code section 3345.

   A.   Defendant knew or should have known that its conduct was directed to a disabled person.
   B.   Defendant's conduct caused a disabled person, Plaintiff, to suffer a loss of a source of income.
   C.   Plaintiff, as a disabled person, was substantially more vulnerable then other members of the public because of her poor health or infirmity and disability and actually suffered substantial physical, emotional, and economic damages resulting from Defendant's conduct.
   D.   Therefore, since the trier of fact is authorized by statute to impose a remedy in the form of punitive damages to punish and deter and the amount of that remedy is subject to the trier of

fact's discretion this Court should award three times greater than the amount the trier of fact would impose in the absence of an affirmative finding of the foregoing facts.

### THIRD CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

47. Plaintiff incorporates by reference paragraphs 1 through 46 of this Complaint.

48. Defendant's conduct, alleged herein, was extreme and outrageous.

49. Defendant intended to cause Plaintiff to suffer severe emotional distress or acted with a reckless disregard of the probability that such distress would result from its conduct.

50. As a result of Defendant's conduct, as alleged herein, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff prays damages as follows:

1. Compensatory damages of $212,600.10, for past and future disability benefits, plus interest at 10% on past due benefits.

2. Compensatory damages for emotional distress of $5,000,000.00, or according to proof.

3. Compensatory damages for the value of reasonable attorney's fees incurred obtaining the benefits of The Policy, according to proof.

4. Punitive damages in an amount sufficient to punish and make an example of Defendant.

5. Triple punitive damages pursuant to California Civil Code section 3345.

6. Costs incurred prosecuting this action.

7. Such other and further relief as this Court deems just and proper.

Dated: October 30, 2012

*[signature]*

ROBERT J. ROSATI, No. 112006
ERISA Law Group, LLP
Attorneys for Plaintiff,
Donald Hall

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby requests trial by jury in this action.

Dated: October 30, 2012

*[signature]*

ROBERT J. ROSATI, No. 112006
ERISA Law Group, LLP
Attorneys for Plaintiff,
Donald Hall